**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **RANDELL SCOTT JR., et al.,** ) | Case No. 1:13 CV 2020 |
| ) | |
| Plaintiff, ) | |
| ) | Judge Dan Aaron Polster |
| vs. ) | |
| ) | |
| **CITY OF CLEVELAND et al.,** ) | **ORDER** |
| ) | |
| Defendants. ) | |

    This is a civil-rights case arising out of an incident that occurred at a private residence in the City of Cleveland on September 15, 2012, involving Plaintiff Randell Scott Jr. and two Cleveland City Police Officers, officers Worsencroft and Johnson (together "Defendants"). Pending before the Court is Defendants' Motion for Partial Judgment on the Pleadings ("Motion") (Doc # 14), Plaintiffs Randell Scott and S.A.S's Response in Opposition to the Motion (Doc. # 18) and Defendants' Reply Brief (Doc. # 20). For the following reasons, the Motion for Partial Judgment on the Pleadings is **GRANTED.**

### I. BACKGROUND

    The following facts are alleged by Plaintiffs in their Amended Complaint and are taken as true for purposes of the motion for judgment on the pleadings. *Ziegler v. IBP Hog Market, Inc.* 249 F.3d 509, 512 (6th Cir. 2001).

    Plaintiffs allege that on September 15, 2012 at approximately 12:20 a.m., officers Worsencroft and Johnson were on patrol in the area of East 93rd Street and Parmelee Avenue in the City of Cleveland. While they were on patrol, they observed Scott walking from his car towards a residence located at 9307 Parmelee Avenue with a can of beer in his hands and a

handgun tucked in the waist of his pants. Officers Worsencroft and Johnson approached Scott and yelled "come here!" Scott set the can of beer down on the steps, raised his hands in the air, stated " I do have a gun license and I do have my weapon on me" and began to walk towards the officers. At some point after this interaction, officer Worsencroft and/or officer Johnson instructed Scott to put his hands behind his back. As Scott began to comply with this instruction officer Worsencroft fired his service weapon, striking Scott in the abdomen with a single bullet. After Scott fell to the ground, officer Johnson handcuffed him until an emergency medical service vehicle arrived.

Following this incident, on September 12, 2013, Scott filed this lawsuit against the City,[1] officers Johnson and Worsencroft, in their individual and official capacities, and ten John Doe officers, in their individual and official capacities. Scott alleged that the Defendants violated his Constitutional rights, and brought state law claims for assault, battery and loss of parental consortium. On October 9, 2013, Scott filed an Amended Complaint, in which he joined his minor daughter as a party. Subsequently, Defendants Worsencroft and Johnson filed a Motion for Partial Judgment on the Pleadings on Plaintiffs' Unreasonable Search and Seizure claim (Second Cause of Action).

## II. LEGAL STANDARD

A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim. *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n,* 623 F.3d 281, 284 (6th Cir. 2010). In considering a motion for judgment on the pleadings, the Court must "construe the complaint in the light most favorable to the nonmoving

---

[1] By Memorandum of Opinion and Order dated December 13, 2013, the Court granted the City's Motion to Dismiss (Doc. # 17).

party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Barany-Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (citation omitted).  However, a court need not accept as true legal conclusions or unwarranted factual inferences.  *Id.* ( internal quotation omitted).  In order for a complaint to withstand a 12 (c) motion for judgment on the pleadings, it "must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.*

### III. ANALYSIS

As an initial matter, Defendants argues that Plaintiffs' second cause of action, as it relates to the use of force, is duplicative of their first cause of action and, therefore, should be dismissed.  The Court agrees.  The only alleged use of force is the shooting.  Plaintiffs' second cause of action, entitled "Unreasonable Search and Seizure 42 USC 1983", alleges that the Defendants violated Scott's Fourth and Fourteenth Amendment rights when they seized, detained, and/or arrested him without probable cause or reasonable suspicion.  In addition, Plaintiffs' second cause of action alleges that the Defendants' "use of excessive force" violated Scott's constitutional rights.  In their first cause of action, Plaintiffs separately bring a claim for excessive force.  Plaintiffs' first cause of action, entitled "Excessive Force 42 USC 1983", alleges that Defendant Worsencroft's use of force violated Scott's Fourth and Fourteenth Amendment rights.  Because the only alleged use of force is the shooting, Plaintiffs' second cause of action, as it relates to the shooting, is duplicative of their first cause of action.

In their Opposition Brief, Plaintiffs cite Sixth Circuit case law for the proposition that "the act of shooting Plaintiff Scott herein constituted a "seizure" in the within matter."  (Doc. # 18, p. 5).  In doing so, Plaintiffs seem to be suggesting that the alleged shooting constitutes two

separate claims under the Fourth Amendment: an "unreasonable search and seizure" claim and an "excessive force" claim.  However, the Fourth Amendment's prohibition against unreasonable seizure of the person is the Constitutional right that is infringed by the use of excessive force, it is not a separate claim.  *See Grahm v. Connor,* 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force....In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments.") (citations omitted).

Defendants, in the instant motion, do not address the merits of Plaintiffs' excessive force claim, nor do they seek to dismiss Plaintiffs first cause of action for excessive force. Accordingly, the Court dismisses Plaintiffs' second cause of action as it relates to the use of excessive force.

Next, Defendants argue that their initial stop of Plaintiff Scott and subsequent use of handcuffs did not violate Scott's Fourth Amendment right.  The Court agrees.

**A. Initial Stop**

Plaintiffs' allege that Defendant Worsencroft and Johnson's entry onto private property (the area in front of the porch that Scott was walking towards) and subsequent seizure, detention, and/or arrest of Scott without a warrant and probable cause or reasonable suspicion violated his Fourth Amendment right.

"A warrantless search or seizure is 'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'"  *United States v.*

*Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The Supreme Court has identified three types of reasonable, and thus permissible, warrantless encounters between police officers and citizens, one of which is "a temporary involuntary detention or *Terry* stop." *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir.1994)). In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).

To determine whether a particular stop is permissible under the Fourth Amendment, a court "must look at the 'totality of the circumstances' of [the] case to see whether the detaining officer has a 'particularized and objective' basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). While an "officer must be able to articulate more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity" in order to justify a investigatory stop, *Wardlow,* 528 U.S. at 123-24 (internal quotation marks omitted), "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989))

In the present case, Plaintiffs' Amended Complaint alleges that Defendants Johnson and Worsencroft observed Scott walking on a sidewalk with a beer in his hands and a handgun tucked in the waist of his pants**.** Defendants contend that this provided them with a reasonable suspicion that Scott was violating the statute prohibiting carrying an open container in a public

place ( RC § 4301.62) and the statute prohibiting carrying a weapon while intoxicated (RC 2923.15).  Plaintiffs do not claim that the beer can was closed, rather, they argue that observing someone walking with a can of beer ("which may or may not be open") does not rise to the level of reasonable suspicion that he is carrying an open container in a public place or is intoxicated.  The Court disagrees.  The facts as alleged by Plaintiffs would give a law enforcement officer reasonable suspicion to detain Scott.

When Defendants Worsencroft and Johnson observed Scott it was approximately 12:20 a.m., he had a weapon tucked in the waist of his pants, a can of beer in his hands and he was walking towards a residence where several of his friends were sitting on the front porch.  In light of these circumstances, it was objectively reasonable for the officers to conduct a Terry stop to determine if Scott was violating the open container law and/or was carrying a gun while intoxicated.  Therefore, the factual allegations, as they relate to the initial stop of Scott, do not show that there was a Fourth Amendment violation.  *See Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ( In order to withstand a 12(c) motion for judgment on the pleadings, "the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible.").

### B. Handcuffs

Plaintiffs argue that even if the Defendants had a reasonable suspicion that Scott was engaging in criminal activity, it was unreasonable for Defendant Johnson to handcuff Scott.  The Court disagrees.  The Sixth Circuit has held that "the use of handcuffs [does not] exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution."  *U.S. v. Foster,* 376 F.3d 577, 587 (6th Cir. 2004).  It would have been reasonable for their safety for the officers

to handcuff the armed Scott while conducting the *Terry* stop, and that is apparently what they planned to do after directing Scott to place his hands behind his back. Scott was still conscious and armed after shooting, and, therefore, still posed a safety concern.

### III. Conclusion

For the following reasons, the Motion for Partial Judgment on the Pleadings as to Plaintiffs' second cause of action is **GRANTED.** As the second cause of action is the only claim against Defendant Johnson, he is dismissed from the case. The only federal claim remaining is Plaintiffs' excessive force claim against Defendant Worsencroft for the shooting.

 */s/ Dan A. Polster 12/23/13*
**Dan Aaron Polster**
**United States District Judge**